## Case No. 9,500.

### The METIS.

[5 Ben. 203.][1]

District Court. S. D. New York. June, 1871.

COLLISION—DAMAGES—TOTAL LOSS—INSURANCE—PARTIES.

1. In a case of collision for the sinking of a schooner by a steamer in Long Island Sound, the libel alleged that the schooner was "sunk," and the answer admitted that "the schooner with her cargo was sunk and lost." The steamer was held liable, and the commissioner, to whom it was referred to ascertain the damages, reported, as such damages, the whole value of the schooner and her cargo. Exceptions were filed to the report, because the commissioner had allowed such whole value in the absence of any proof that the libellants had tried to raise the vessel, or that she could not be raised; because he had allowed such whole value although one of the libellants who owned half of the schooner had insurance on her, and had been paid by the insurers for a total loss; and because one-half of the cargo was the property of a party who was not a libellant: *Held*, that, on the pleadings, no proof was necessary that the schooner could not be raised.

2. The facts in relation to the insurance constituted no defence.

3. The owners of the schooner, who were carriers of the cargo, could recover for the damage to the cargo, without joining the other owner of it as a libellant.

In admiralty.

Owen, Nash & Gray, for libellants.

Evarts, Southmayd & Choate, for claimants.

BLATCHFORD, District Judge. These are exceptions to the report of the commissioner in a case of collision, wherein the schooner Cosmos, and her cargo, were sunk by the steamer Metis, and there was a decree for the libellant. [Case No. 9,499.]

The first, second and third exceptions may be considered together. The first exception is, that the commissioner improperly received evidence of the value of the schooner at the time of the collision, as fixing the amount of the damage to her, instead of requiring evidence as to the amount which it would have cost to raise and repair her. The second exception is, that the commissioner erred in allowing $5,000 for the

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

schooner, on the basis of her value at the time of the collision, without evidence of any efforts, on the part of the libellants, to raise and repair her, or that the circumstances of her sinking were such that she could not have been raised and repaired, or that the cost of raising and repairing her would have exceeded or equalled her value after the repairs were made. The third exception is, that he commissioner erred in allowing $5,000 for the schooner, as damages, without any evidence on which an assessment of the damages could be properly computed. The commissioner allowed for a total loss of the vessel, and for her value when lost. The claimants insist, that the libellants should have shown that they tried to raise her and failed, or that she could not have been raised and repaired, or that the cost of raising and repairing her would have at least equalled her value after being repaired. She was sunk in the night, in Long Island Sound, off Plum Island, going down in some two minutes after the steamer struck her, and her cargo was 1,123 barrels of lime. The libel alleges that she was "sunk" by the steamer; that she "sank" so quickly that the officers and crew with difficulty saved their lives; and that the steamer ran against her and "sank" her. The answer states, that, in consequence of the collision, the "schooner, with her cargo, was sunk and lost." This state of the pleadings is sufficient to relieve the libellants from showing that the vessel was totally lost by the sinking, or that they tried to raise her, or that she could not have been raised, or would have been worth less than the cost of raising and repairing her. The case is not like that of The Baltimore, 8 Wall. [75 U. S.] 377. In that case the libel alleged that the vessel and cargo were sunk in such deep water as to make both of them a total loss. That allegation was expressly denied by the answer, and the libellants failed to introduce any proof to support their allegation. In the present case, there being no other proof, the allegation of the answer is sufficient proof that the vessel was so lost as to have been totally lost.

The fourth, fifth and sixth exceptions go to the point, that the allowance of $5,000, as the value of the vessel, was excessive, on the evidence, and that the amount allowed for such value should not have been more than $3,000. I think that the commissioner was fully justified in fixing the sum of $5,000 as the value of the vessel.

The seventh exception is, that the commissioner erred in allowing the $5,000, on the basis of the value of the whole of the vessel, and that he should not have allowed more than one-half thereof, inasmuch as one-half of the schooner was owned by the libellant Hall, and such interest of his was insured, and the underwriters had paid him $1,500, as and for a total loss thereon, and had thereby become the owners of the claim for the damages to such one-half interest, and Hall no longer had any interest therein. This defence, in substance, was taken in the answer. Such a defence was expressly overruled in the case of The Monticello v. Mollison, 17 How. [84 U. S.] 152, 155. See, also, Newell v. Norton, 3 Wall. [70 U. S.] 257, 267.

The eighth exception is, that the commissioner erred in allowing $1,263.67, for loss of cargo, on the basis of the full value thereof, without evidence as to the ownership of the cargo, except as to the one-half interest therein owned by the libellant Hall, and without evidence as to whether the vessel or her owners were liable to the owners of the cargo for the loss of the cargo or any part thereof. The cargo was owned by the libellant Hall and another person jointly. Such other person is not a libellant. Hall was master of the schooner. The cargo was being transported on freight. The owners of the vessel are libellants. As such owners and carriers of the cargo on freight, the libellants can recover for the damage to the cargo, without the joining, as co-libellant, of the person who, jointly with Hall, owned the cargo. The Commander-in-Chief, 1 Wall. [68 U. S.] 43, 51, 52; The Commerce, 1 Black [66 U. S.] 574, 582; Newell v. Norton, 3 Wall. [70 U. S.] 257, 267.

The ninth and tenth exceptions, which relate to the value of the personal effects belonging to the libellants Hall and Grindle, are overruled.

All of the exceptions are disallowed, and the report is confirmed.